# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

EUGENE MORIARTY, MOUFID MITRI, MD, EVA A. MITRI, RONALD RICHARDS, ANNALOU SIMONS, THE TASHMAN 2012 IRREVOCABLE TRUST, RICHARD TASHMAN, TRUSTEE, THE HAROLD CHAPIN REVOCABLE TRUST, DIANE KAUFMAN, TRUSTEE, MARCELO A. ALVAREZ, LP EQUITY 3, LLC, a North Carolina limited liability company, DENNIS G. MILLER, THE KENNETH RIVERA TRUST, STEVEN KOONCE, TRUSTEE, THE AUBREY FAMILY TRUST, JANICE AUBREY, TRUSTEE, CHRISTINE FINKENSTADT, WILLIAM COUCH, HERBERT GLASS, OSCAR LANDUYT, JR, THE PETER PESTILLO TRUST, PETER PESTILLO TRUSTEE, GREGORY M. BENTLEY, and DANIEL C. BENTLEY,

**JURY DEMAND**

CASE NO.

HON.

                    Plaintiffs.

v.

WYNNESTONE COMMUNITIES CORPORATION, (formerly Amurcon Corporation), a Michigan Corporation, GILBERT "BUZZ" SILVERMAN, ERIC BEAN, JACKIER GOULD BEAN & EIZELMAN, PC, a Michigan professional corporation, jointly and severally, INDUSTRIAL-STEVENS LIMITED DIVIDEND HOUSING ASSOCIATION, a Michigan limited partnership, BICENTENNIAL LIMITED DIVIDEND HOUSING ASSOCIATION, a Michigan limited partnership, WHISPERING WOODS LIMITED DIVIDEND HOUSING ASSOCIATION, a Michigan limited partnership, RIDGEWOOD VILLAGE LIMITED DIVIDEND HOUSING ASSOCIATION a Michigan limited partnership, THE DWIGHT D. TAYLOR 1999 REVOCABLE TRUST, DWIGHT D. TAYLOR, TRUSTEE, ROBERT M. DAVIS CHILDREN'S TRUST, THE ROBERT M. DAVIS, TRUSTEE; ANDREW DEBREY IRREVOCABLE TRUST, ADELE DEBREY, TRUSTEE, MAURICE D. LEBOWITZ, RICHARD R.

MIRANDA, ALBERT J. BRIGGS, SANDRA M. BRIGGS, BEVERLY F. ALBERT, THE DOUGLAS F. ALLISON TRUST, KEVIN T. KRAL, TRUSTEE, ERIC VAN LUSTABADER, JOSEPH B. ANDERSON, JR., RICHARD MCGRATH, THE ESTATE OF RULON RICKS, WILLIAM W. BUCHER, and DEE ANN BUCHER,

Defendants.

MICHAEL J. KEMNITZ, P.C.
BY: MICHAEL J. KEMNITZ (P57227)
Attorney for Plaintiffs
645 Griswold, Suite 1717
Detroit, Michigan 48226
(313) 967-0100

**PLAINTIFFS' COMPLAINT AND JURY DEMAND**

## I.      INTRODUCTION

1.      Plaintiffs are 19 investor limited partners, or other interest holders, in four limited partnerships. Plaintiffs bring this action under the Racketeer Influenced and Corrupt Organizations Act, 18 USC §1961, et seq., against Defendant Wynnestone Communities Corporation (hereinafter "Wynnestone"), the general partner of each of the limited partnerships, Defendant Gilbert "Buzz" Silverman (hereinafter "Silverman"), the sole owner of Wynnestone, Defendant Eric Bean (hereinafter "Bean") an attorney, and Bean's law firm, Defendant Jackier, Gould, Bean & Eizelman, PC (hereinafter "Jackier Gould"). Over the course of at least five years, Silverman, Wynnestone, Bean and Jackier Gould operated a criminal enterprise for the purpose of stealing millions of dollars from, among others, Plaintiffs and other partners of various limited partnerships in which Wynnestone was the general partner, including but not limited to the four at issue herein, and using those stolen funds to pay the multi-million dollar debts of Silverman and Wynnestone and to otherwise financially enrich themselves. Plaintiffs also assert various related state-law claims, including breach of contract, breach of fiduciary duty, accounting, theft, embezzlement, and claims to formally dissolve each of the limited partnerships.

2.      The amount of money stolen from Plaintiffs as a result of Silverman, Wynnestone, Bean and Jackier Gould's criminal enterprise is in excess of $1,000,000.00.

## II.     JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 based upon the federal claims asserted under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. This Court has supplemental jurisdiction over Plaintiffs' state law

claims pursuant to 28 U.S.C. § 1367, as the state law claims are so related to Plaintiffs' federal law claims that the claims form part of the same case or controversy.

4.     This Court has personal jurisdiction over all Defendants because all Defendants are subject to Michigan's long arm statutes, MCL § 600.701-715, including but not limited to by the fact at each is domiciled in Michigan, and/or incorporated or formed under the laws of Michigan, and/or transacts business within Michigan, and/or owns, uses or possesses real or tangible personal property in Michigan, and/or acts as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within Michigan.  Additionally, all Defendants have sufficient minimum contacts with Michigan such that the maintenance of this lawsuit in the Eastern District of Michigan does not offend traditional notions of fair play and substantial justice.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants Silverman, Wynnestone, Bean, and Jackier Gould reside or conduct business in the Eastern District of Michigan and/or a substantial part of the events giving rise to the claims raised herein occurred in the Eastern District of Michigan.

III.    PARTIES

A.    THE LIMITED PARTNERSHIPS

6.     Defendant Industrial-Stevens Limited Dividend Housing Association (hereinafter "Industrial-Stevens"), is a Michigan limited partnership, with its registered office located in Birmingham, Michigan.  As set forth below, Plaintiffs seek the dissolution of Industrial-Stevens as a partnership, but they do not seek any monetary damages against the partnership itself.

7.     Industrial-Stevens was established by and among its partners under the provisions of the Michigan Uniform Limited Partnership Act, and it is governed by a partnership agreement

dated December 3, 1980, as amended. Defendants are in possession of the partnership agreement, and all amendments thereto.

8.     As stated in the Industrial-Stevens partnership agreement, the purpose of the partnership was to acquire a certain parcel of real property in Detroit, Michigan and to construct and operate an apartment building thereon. Hereinafter, this property, and the apartment building thereon, shall be referred to as "the Industrial-Stevens Project."

9.     Defendant Bicentennial-1984 Limited Dividend Housing Association (hereinafter "Bicentennial"), is a Michigan limited partnership, with its registered office located in Birmingham, Michigan. As set forth below, Plaintiffs seek the dissolution of Bicentennial as a partnership, but they do not seek any monetary damages against the partnership itself.

10.     Bicentennial was established by and among its partners under the provisions of the Michigan Uniform Limited Partnership Act, and it is governed by a partnership agreement dated November 1, 1984, as amended. Defendants are in possession of the partnership agreement, and all amendments thereto.

11.     As stated in the Bicentennial partnership agreement, the purpose of the partnership was to acquire a certain parcel of real property in Detroit, Michigan and to construct and operate an apartment building thereon. Hereinafter, this property, and the apartment building thereon, shall be referred to as "the Bicentennial Project."

12.     Defendant Whispering Woods Limited Dividend Housing Association (hereinafter "Whispering Woods"), is a Michigan limited partnership, with its registered office located in Birmingham, Michigan. As set forth below, Plaintiffs seek the dissolution of Whispering Woods as a partnership, but they do not seek any monetary damages against the partnership itself.

13.     Whispering Woods was established by and among its partners under the provisions of the Michigan Uniform Limited Partnership Act, and it is governed by a partnership agreement dated June 1, 1980, as amended.  Defendants are in possession of the partnership agreement, and all amendments thereto.

14.     As stated in the Whispering Woods partnership agreement, the purpose of the partnership was to acquire a certain parcel of real property in Waterford, Michigan and to construct and operate an apartment building thereon.  Hereinafter, this property, and the apartment building thereon, shall be referred to as "the Whispering Woods Project."

15.     Defendant Ridgewood Village Limited Dividend Housing Association (hereinafter "Ridgewood Village"), is a Michigan limited partnership, with its registered office located in Birmingham, Michigan.  As set forth below, Plaintiffs seek the dissolution of Ridgewood Village as a partnership, but they do not seek any monetary damages against the partnership itself.

16.     Ridgewood Village was established by and among its partners under the provisions of the Michigan Uniform Limited Partnership Act, and it is governed by a partnership agreement dated June 15, 1984, as amended.  Defendants are in possession of the partnership agreement, and all amendments thereto.

17.     As stated in the Ridgewood Village partnership agreement, the purpose of the partnership was to acquire a certain parcel of real property in Grand Rapids, Michigan and to construct and operate an apartment building thereon.  Hereinafter, this property, and the apartment building thereon, shall be referred to as "the Ridgewood Village Project."

### B.   THE INDUSTRIAL-STEVENS PLAINTIFFS

18.   Plaintiff Eugene Moriarty is a resident of Durham County, North Carolina and is a limited partner in Industrial-Stevens.

19.   Plaintiff Moufid Mitri, MD is a resident of Oakland County, Michigan and is a limited partner in Industrial-Stevens.

20.   Plaintiff Eva A. Mitri is a resident of Oakland County, Michigan and is a limited partner in Industrial-Stevens.

21.    Plaintiff Ronald Richards is a resident of Los Angeles County, California and is a limited partner in Industrial-Stevens.

22.   Plaintiff Annalou Simons is a resident of Wayne County, Michigan and is a limited partner in Industrial-Stevens.

23.   Plaintiff Harold Chapin Revocable Trust, Diane Kaufman, Trustee, is a resident of Montgomery County, Maryland and the Harold Chapin Revocable Trust is a limited partner in Industrial-Stevens.

24.   Plaintiff Marcelo Alvarez is a resident of Collier County, Florida and is a limited partner in Industrial-Stevens.

25.   Plaintiff Tashman 2012 Irrevocable Trust, Richard Tashman, Trustee (hereinafter "Plaintiff Tashman") is a resident of Los Angeles County, California, and the Tashman 2012 Irrevocable Trust holds a limited partner interest in Industrial-Stevens.  During his life, Stanley Tashman was a limited partner in Industrial-Stevens until his death in 2019.  Upon his death, Mr. Tashman's limited partnership interest in Industrial-Stevens was automatically transferred to the Tashman 2012 Irrevocable Trust pursuant to the terms of that trust.

26.     Plaintiff LP Equity 3, LLC (hereinafter "Plaintiff LP Equity") is a North Carolina limited liability company with its principal place of business located in New Hanover County, North Carolina.

27.     In 2014 and 2015, three limited partners in Industrial-Stevens[1] (the "Assigning Industrial-Stevens Partners")  each executed a Purchase and Sale Agreement and Assignment for the purpose of assigning and transferring each of their partnership interests in Industrial-Stevens to Plaintiff LP Equity, including but not limited to the transfer and assignment of their respective economic rights in the partnership (i.e., the right to partnership capital, profits, etc.).  Defendants are in possession of these Purchase and Sale Agreements and Assignments.

28.     Plaintiff LP Equity provided copies of all the Purchase and Sale Agreements and Assignments from the Assigning Industrial-Stevens Partners to Defendant Wynnestone Communities Corporation as the general partner of Bicentennial.  At this same time, Plaintiff LP Equity requested that it be replaced as the limited partner in the place of each of the Assigning Bicentennial Partners in accordance with the Purchase and Sale Agreements and Assignments.

29.     To date, Defendant Wynnestone Communities Corporation, as the general partner of Bicentennial, has improperly refused to admit Plaintiff LP Equity as a limited partner in the place of the Assigning Industrial-Stevens Partners.  As such, each of the Assigning Industrial-Stevens Partners remain limited partners in Industrial-Stevens, but Plaintiff LP Equity holds the right to all economic benefit of those partnership interests, including the right to all capital and profits.

---

[1] The Dwight D. Taylor 1999 Revocable Trust, Dwight D. Taylor, Trustee; Robert M. Davis Children's Trust, Robert M. Davis, Trustee; Andrew Debrey Irrevocable Trust, Adele Debrey, Trustee.

30.     The Plaintiffs identified in this subsection are collectively referred to herein as "the Industrial-Stevens Plaintiffs."

31.     The Industrial-Stevens Plaintiffs, with the exception of Plaintiff Tashman, and Defendants Silverman, Wynnestone, Bean and Jackier Gould entered into tolling agreements, which tolled the statute of limitations, and all other time-based defenses, related to the causes of action raised herein from March 4, 2019 through September 4, 2019. Prior to his death, Stanley Tashman and Defendants Silverman, Wynnestone, Bean and Jackier Gould entered into tolling agreements, which tolled the statute of limitations, and all other time-based defenses, related to the causes of action raised herein from March 4, 2019 through June 4, 2019.

### C.     THE BICENTENNIAL PLAINTIFFS

32.     Plaintiff Dennis G. Miller (hereinafter "Plaintiff Miller") is a resident of Harris County, Texas and a limited partner in Bicentennial.

33.     Plaintiff Kenneth Rivera Trust, Steven Koonce Trustee, (hereinafter "Plaintiff Rivera"), is a resident of Sacramento County, California and the Kenneth Rivera Trust is a limited partner in Bicentennial.

34.     In 2014 and 2015, eleven limited partners in Bicentennial [2] (the "Assigning Bicentennial Partners") each executed a Purchase and Sale Agreement and Assignment for the purpose of assigning and transferring each of their partnership interests in Bicentennial to Plaintiff LP Equity, including but not limited to the transfer and assignment of their respective economic rights in the partnership (i.e., the right to partnership capital, profits, etc.). Defendants are in possession of these Purchase and Sale Agreements and Assignments.

---

[2] Maurice D. Lebowitz, Richard R. Miranda, Albert J. Briggs, Sandra M. Briggs, Beverly F. Albert, Douglas F. Allison Trust, Kevin T. Kral, Trustee, Eric Van Lustbader, Joseph B. Anderson, Jr., Richard McGrath, The Estate of Rulon Ricks, William W. Bucher, and Dee Ann Bucher

35.     Plaintiff LP Equity provided copies of all the Purchase and Sale Agreements and Assignments from the Assigning Bicentennial Partners to Defendant Wynnestone Communities Corporation as the general partner of Bicentennial.  At this same time, Plaintiff LP Equity requested that it be replaced as the limited partner in the place of each of the Assigning Bicentennial Partners in accordance with the Purchase and Sale Agreements and Assignments.

36.     To date, Defendant Wynnestone Communities Corporation, as the general partner of Bicentennial, has improperly refused to admit Plaintiff LP Equity as a limited partner in the place of the Assigning Bicentennial Partners.  As such, each of the Assigning Bicentennial Partners remain limited partners in Bicentennial, but Plaintiff LP Equity holds the right to all economic benefit of those partnership interests, including the right to all capital and profits.

37.     The Plaintiffs identified in this subsection are collectively referred to herein as "the Bicentennial Plaintiffs."

38.     The Bicentennial Plaintiffs and Defendants Silverman, Wynnestone, Bean and Jackier Gould entered into tolling agreements, which tolled the statute of limitations, and all other time-based defenses, related to the causes of action raised herein from December 10, 2018 through September 4, 2019.

### D.     THE WHISPERING WOODS PLAINTIFFS

39.     Plaintiff Aubrey Family Trust, Janice Aubrey Trustee, (hereinafter "Plaintiff Aubrey") is a resident of Los Angeles County, California, and the Aubrey Family Trust holds a limited partner interest in Whispering Woods.  During his life, Truman Aubrey was a limited partner in Whispering Woods until his death in 2016.  Upon his death, Mr. Aubrey's limited partnership interest in Whispering Woods was automatically transferred to the Aubrey Family Trust pursuant to the terms of that trust.

40.     Plaintiff William Couch is a resident of Macomb County, Michigan and is a limited partner in Whispering Woods.

41.     Plaintiff Christine Finkenstaedt is a resident of Wayne County, Michigan, and is a limited partner in Whispering Woods.

42.     Plaintiff Herbert Glass is a resident of Oakland County, Michigan and is a limited partner in Whispering Woods.

43.     Plaintiff Oscar Landuyt, Jr. is a resident of Macomb County, Michigan and is a limited partner in Whispering Woods.

44.     The Plaintiffs identified in this subsection are collectively referred to herein as "the Whispering-Woods Plaintiffs."

45.     The Whispering-Woods Plaintiffs and Defendants Silverman, Wynnestone, Bean and Jackier Gould entered into tolling agreements, which tolled the statute of limitations, and all other time-based defenses, related to the causes of action raised herein from March 4, 2019 through September 4, 2019.

**E.     THE RIDGEWOOD VILLAGE PLAINTIFFS**

46.     Plaintiff Peter Pestillo Trust, Peter Pestillo, Trustee is a resident of Collier County, Florida and the Peter Pestillo Trust is a limited partner in Ridgewood Village.

47.     Plaintiff Gregory M. Bentley is a resident of Charlevoix County, Michigan and is a limited partner in Ridgewood Village.

48.     Plaintiff Daniel C. Bentley is a resident of Charlevoix County, Michigan and is a limited partner in Ridgewood Village.

49.     The Plaintiffs identified in this subsection are collectively referred to herein as "the Ridgewood-Village Plaintiffs."

50.     The Ridgewood Village Plaintiffs and Defendants Silverman, Wynnestone, Bean and Jackier Gould entered into tolling agreements which tolled the statute of limitations, and all other time-based defenses, related to the causes of action raised herein from December 10, 2018 through September 4, 2019.

## F.    DEFENDANTS WYNNESTONE AND SILVERMAN

51.     Defendant Wynnestone is a Michigan corporation with its current registered office in Birmingham, Oakland County, Michigan.

52.     At all times relevant herein, Defendant Wynnestone is and was a general partner of Industrial-Stevens, Bicentennial, Ridgewood Village, and Whispering Woods.  Upon information and belief, Wynnestone is also a limited partner in Industrial-Stevens and Bicentennial.

53.     Defendant Silverman maintains a residence in Maricopa County, Arizona and, upon information and belief, as the resident agent of Wynnestone and numerous Michigan limited liability companies, maintains a residence in the State of Michigan as required by MCL § 450.1241(1)(b) and MCL § 450.4207.  Defendant Silverman is the sole shareholder of Defendant Wynnestone.

54.     At all times relevant herein, Wynnestone acted through its officers, members, directors and/or agents, including Silverman.

## G.    WYNNESTONE AS THE ALTER-EGO OF SILVERMAN

55.     Founded in 1971 by the late Detroit lumber and real estate magnate Fred Erb, Amurcon Corporation (the prior name of Wynnestone) was a once reputable real estate development and management company.  The core business of Amurcon was developing and managing low-income apartment buildings that were subsidized and supervised by the United

States Department of Housing and Urban Development (HUD) and the Michigan State Housing Development Authority (MSHDA).  Each of the apartment buildings was owned by a limited partnership, with Amurcon as a general partner.  The construction and operation of these apartment buildings was funded by subsidized loans from HUD and/or MSHDA, as well as from funds from the various investor limited partners in each of the limited partnerships.  The investor limited partners, who were located around the United States and were mostly unknown to each other, were passive investors with no active role in the day-to-day operation of the partnerships or the apartment buildings owned by the partnerships.  The limited partnerships at issue in this case (Bicentennial, Whispering Woods, Industrial-Stevens and Ridgewood Village) are examples of such Amurcon-managed limited partnerships that owned and operated HUD/MSHDA-subsidized apartment buildings.

56.     In March of 2006, Silverman acquired full ownership of Amurcon and became the sole member of its board of directors.

57.     Initially, after obtaining ownership and control of Amurcon, Silverman retained the existing employees, who had competently run the company for decades, had expertise in operating and managing the HUD/MSHDA regulated low-income projects and the limited partnerships that owned them, and had established relationships with many of the limited partners of those partnerships.

58.     From approximately October of 2010 to June of 2011, however, Silverman terminated all of the executive level employees of Amurcon, and soon thereafter terminated the entire accounting staff of Amurcon.   One of the reasons for many of these terminations was to eliminate the old-guard Amurcon employees who would not stand for the thefts from the limited partners that Silverman planned to perpetrate, as detailed below.

59.     In 2011, Silverman changed the name of the company from Amurcon to Wynnestone Communities Corporation (Wynnestone).   This name change had no effect on Amurcon's (now Wynnestone's) status as the managing general partner of the various limited partnerships.

60.     After he removed the old-guard employees of the company, Silverman further transformed Wynnestone (formerly Amurcon) from a legitimate property development and management company into a mere instrumentally and alter ego of himself, which he used to personally enrich himself at the expense of the investor limited partners in the various partnerships that Wynnestone managed.   After the termination of the above employees, and in an effort to conceal the thefts described below, Silverman has intentionally kept many of the books and records of the various partnerships, and of Wynnestone itself, in a state of disarray, or purported disarray, in an effort to prevent meaningful inquiry into the transactions of those partnerships or of Wynnestone.

61.     Silverman also operated Wynnestone as an alter-ego of himself by treating the assets of Wynnestone as his personal assets, and by using Wynnestone to commit various frauds and other wrongs, including but not limited to those described herein.

62.     By treating Wynnestone's assets as his personal assets, by improperly removing money from Wynnestone, and by otherwise operating Wynnestone as a mere instrumentality and alter-ego of himself, Silverman caused Wynnestone to be continuously insolvent and/or undercapitalized.

63.     In his operation of Wynnestone as his alter-ego, Silverman ignored the required corporate formalities, including but not limited to failing to file required annual reports or keep corporate minutes.   In addition, and upon information and belief, in an effort to conceal the

millions of dollars that Silverman, Wynnestone, Bean, and Jackier Gould stole from Plaintiffs and the other partners in various partnerships, as detailed herein, Silverman and Wynnestone, among other things, failed to file state or federal tax returns for Wynnestone, or failed to file accurate state of federal tax returns for Wynnestone, since at least tax year 2011, because the filing of accurate tax returns would reveal the millions of dollars stolen from Plaintiffs and the various other partners.

64.     Because Silverman operated Wynnestone as a mere instrumentality and alter-ego of himself, and for the reasons set forth above, Silverman is personally liable for the actions, omissions and obligations of Wynnestone alleged herein.

### H.     DEFENDANTS BEAN AND JACKIER GOULD

65.     Defendant Bean is a resident of Oakland County, Michigan.

66.     At all times relevant herein, Bean was an attorney licensed to practice in the State of Michigan and was employed by Jackier Gould.

67.     Defendant Jackier Gould is a Michigan Professional Corporation with its registered office in Oakland County, Michigan.  Prior to March 24, 2014, and at times relevant herein, Defendant Jackier Gould operated under the name Jackier, Gould, Bean, Upfal & Eizelman, PC.

68.     At all times relevant herein, Bean was an officer, agent and/or employee of Jackier Gould.  At various times during the course of the Silverman Enterprise (defined below), Bean was engaged on behalf of Jackier Gould in providing, or purporting to provide, professional services.  As such, Jackier Gould is liable for those actions and/or omissions of Bean pursuant to MCL § 450.1285(3).

69.     At all times relevant herein, Bean was acting within the scope of his employment with Jackier Gould.   As such, Jackier Gould is liable for the actions and/or omissions of Defendant Bean under the doctrine of *respondeat superior*.

70.     At all times relevant herein, Jackier Gould acted through its members, officers, partners, and/or agents, including but not limited to Bean.

I.     NOMINAL DEFENDANTS

71.     Each of the defendants identified in this paragraph remain limited partners in Bicentennial or Industrial-Stevens, despite having attempted to transfer their respective partnership interests to Plaintiff LP Equity, and, as such, each has an interest in the subject matter of this action, particularly with respect to the request for dissolution and accounting of the partnerships, such that each defendant's presence in the action is essential to permit the Court to render complete relief, and each defendant's ability to protect its interest may be impaired if not joined.   Each such defendant is joined in this action pursuant to Federal Rule of Civil Procedure 19(a).   Because this action seeks, among other things, the dissolution of the partnerships in which each nominal defendant holds an interest, each has been aligned as a defendant in this matter. Plaintiffs do not allege causes of action against these nominal defendants.

   a.   Upon information and belief, nominal Defendant Dwight D. Taylor 1999 Revocable Trust, Dwight D. Taylor, trustee is a resident of San Francisco County, California and is a limited partner in Industrial-Stevens.

   b.   Upon information and belief, nominal Defendant Robert M. Davis Children's Trust, Robert M. Davis, trustee is a resident of Monterey County, California and is a limited partner in Industrial-Stevens.

c.  Upon information and belief, nominal Defendant Andrew Debrey Irrevocable Trust, Adele Debrey, trustee is a resident of Rock Island County, Illinois and is a limited partner in Industrial-Stevens.

d.  Upon information and belief, nominal Defendant Maurice D. Lebowitz is a resident of Miami-Dade County, Florida and is a limited partner of Bicentennial.

e.  Upon information and belief, nominal Defendant Richard R. Miranda is a resident of Rockwell County, Texas and is a limited partner of Bicentennial.

f.  Upon information and belief, nominal Defendant Albert J. Briggs is a resident of Sarasota County, Florida and is a limited partner of Bicentennial.

g.  Upon information and belief, nominal Defendant Sandra M. Briggs is a resident of Sarasota County, Florida and is a limited partner of Bicentennial.

h.  Upon information and belief, nominal Defendant Beverly F. Albert is a resident of Erie County, New York and is a limited partner of Bicentennial.

i.  Upon information and belief, nominal Defendant Douglas Allison Trust, Kevin T. Kral Trustee, is a resident of Wayne County, Michigan and is a limited partner of Bicentennial.

j.  Upon information and belief, nominal Defendant Eric Van Lustbader is a resident of Suffolk County, New York and is a limited partner of Bicentennial.

k.  Upon information and belief, nominal Defendant Joseph B. Anderson, Jr. is a resident of Oakland County, Michigan and is a limited partner of Bicentennial.

l.  Upon information and belief, nominal Defendant Richard McGrath is a resident of Fairfield County, Connecticut and is a limited partner of Bicentennial.

m.  Upon information and belief, nominal Defendant Estate of Rulon Ricks, Leon Ricks Executor, is a resident of Maricopa County, Arizona and is a limited partner of Bicentennial.

n.  Upon information and belief, nominal Defendant William C. Bucher is a resident of Riverside County, California and is a limited partner of Bicentennial.

o.  Upon information and belief, nominal Defendant Dee Ann Bucher is a resident of Riverside County, California and is a limited partner of Bicentennial.

72.  Nominal Defendant E&S Equities I Limited Partnership is a Michigan limited partnership with its principal place of business in Bloomfield Hills, Oakland County, Michigan and is a limited partner of Bicentennial.

73.  Upon information and belief, there exist additional partners of Bicentennial, Whispering Woods, Industrial-Stevens, and Ridgewood Village whose presence in the action may be essential to permit the Court to render complete relief, and each such partner's ability to protect its interest may be impaired if not joined.   At present, however, Plaintiffs are not aware of the identity of all current partners in Bicentennial, Whispering Woods, Industrial-Stevens, and Ridgewood Village, as many of the partners in each of these limited partnerships have changed since the inception of each limited partnership without notice to Plaintiffs.  Upon identification of all such partners, they will be added as additional nominal defendants.

## IV.   GENERAL ALLEGATIONS

### A.   THE RICO ENTERPRISE

74.  At all times relevant herein, Silverman, Wynnestone, Bean, and Jackier Gould (collectively the "RICO Defendants"), and possibly others whose identities and involvement are not yet fully known to Plaintiffs, were a group of individuals associated in fact which constituted

an enterprise as defined by 18 U.S.C. § 1961(4). This enterprise is referred to herein as the Silverman Enterprise.

75.    The Silverman Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose.

76.    The common purpose of the Silverman Enterprise was, among other things, to: 1) exploit Wynnestone's status as the general partner of various limited partnerships (hereinafter "the Target Partnerships") that owned apartment buildings to sell those apartment buildings, 2) steal and/or embezzle the resulting net sale proceeds and other cash that was owed to Plaintiffs and the other partners of the Target Partnerships, 3) use the stolen money to pay the multi-million dollar debts of Silverman and Wynnestone, and 4) use whatever amount of the stolen money that was not used to pay the debts of Silverman and Wynnestone to otherwise enrich the members of the Silverman Enterprise.

77.    The Target Partnerships include, but are not necessarily limited to: Bicentennial, Whispering Woods, Industrial-Stevens, Ridgewood Village, and Hilltop Limited Dividend Housing Association Limited Partnership.

78.    The debts of Silverman and Wynnestone, the payment of which was one of the primary purposes of the Silverman Enterprise, include but are not limited to the following:

    a.   The Comerica Bank Debt: During the time of the Silverman Enterprise, Silverman and Wynnestone owed Comerica Bank in excess of $17,000,000.00 as a result of various loans, letters of credit, and guarantees with the bank.

    b.   The Litigation Debt:  During the time of the Silverman Enterprise, Silverman and Wynnestone were named defendants in several lawsuits, including but not limited to *Mark v Silverman*, *et. al.,* Oakland County Circuit Court Case No. 14-141980-

CK, and *PNC Bank v Hemmingway Orion Township, LLC*, *et at*., USDC EDM Case No. 2:13-cv-13548-BAF-MJH.   As a result of this litigation, Silverman and Wynnestone became liable to pay in excess of $16,000,000.00 to the Plaintiffs in those lawsuits.   In addition, during the time of the Silverman Enterprise, Silverman and Wynnestone incurred hundreds of thousands of dollars in legal fees related to various matters.

79.   As part of the operation or the Silverman Enterprise, Silverman used Wynnestone's status as the managing general partner of each of the Target Partnerships to authorize and execute all sales of the apartment buildings, and to induce HUD and/or MSHDA to release additional funds that were due to Plaintiffs and the other partners of the Target Partnerships.

80.   When necessary to achieve the ends and purposes of the Silverman Enterprise, Bean and Jackier Gould acted, or purported to act, as the attorneys for each of the Target Partnerships to effectuate the sales of the apartment buildings, and/or to secure the release of additional funds from HUD and/or MSHDA that were due to Plaintiffs and the other partners of the Target Partnerships.

81.   Although acting, or purporting to act, as the attorneys for the Target Partnerships, Bean and Jackier Gould's primary function was to carry out the common purpose of the Silverman Enterprise.

     **i.**     **THE THEFT OF MONEY FROM THE INDUSTRIAL-STEVENS PLAINTIFFS AND THE INTERSTATE TRANSPORTATION OF THOSE STOLEN FUNDS**

82.   On or about March 16, 2016, Silverman, Wynnestone, Bean, and Jackier Gould, acting in furtherance of the common purpose of the Silverman Enterprise, used Wynnestone's

status as the general partner of Industrial-Stevens to sell the Industrial-Stevens Project to Kemper and Stevens LDHA, LLC for a total sale price of $3,100,000.00.

83.     At all times relevant to the sale of the Industrial-Stevens Project and the events described herein, Bean and Jackier Gould acted, or purported to act, as attorneys for Industrial-Stevens, but their primary role was that of members of the Silverman Enterprise, and their primary purpose was serving the interests of the Silverman Enterprise and achieving the objectives of the Silverman Enterprise.

84.     At the time of the closing of the sale of the Industrial-Stevens Project, all legitimate obligations of the partnership, other than the money to be distributed to the Industrial-Stevens Plaintiffs and the other partners, were paid from the sale proceeds, and the net sale proceeds, after the payment of those obligations, were at least approximately $2,000,000.00. Pursuant to the partnership agreement governing Industrial-Stevens, upon the sale of the Industrial-Stevens Project, the purpose of the partnership had concluded and the net sale proceeds and other surplus cash were due and payable to the Industrial-Stevens Plaintiffs and the other partners.

85.     Instead of paying the net sale proceeds to the Industrial-Stevens Plaintiffs and the other partners, Silverman, Wynnestone, Bean and Jackier Gould, acting in concert, stole/embezzled those funds on or about March 17, 2016 by, among other things, directing First American Title Insurance Company to transfer the net sale proceeds to a bank account maintained by Jackier Gould at Fifth Third Bank for distribution in accordance with the improper purposes of the Silverman Enterprise.

86.     On or about March 21, 2016, after the sale of the Industrial-Stevens project, Silverman, Wynnestone, Bean and Jackier Gould, acting in concert, stole/embezzled at least an

additional approximately $400,000.00 that was held by Wells Fargo, and that was otherwise payable to the Industrial-Stevens Plaintiffs and the other partners, by directing those funds to be transferred to a bank account maintained by Jackier Gould at Fifth Third Bank for distribution in accordance with the improper purposes of the Silverman Enterprise.

87.     Continuing from the date of the sale of the Industrial-Stevens Project through at least 2016, and knowing that the money represented money that had been stolen/embezzled from the Industrial-Stevens Plaintiffs and the other partners, Silverman, Wynnestone, Bean and Jackier Gould, acting in concert, transferred this money, or caused it to be transferred, to Silverman and/or Wynnestone's creditors, and/or transferred this money, or caused it to be transferred, to themselves or others for their own use and benefit.   Said transfers included transfers of the stolen money in interstate commerce.   By way of example only, and without limitation, such interstate transfers of the stolen funds include the following:

a.  The transfer of a total of $2,112,935.95 on March 17, 2016, in five separate transfers, from a bank account maintained by First American Title Insurance Company at First American Trust, FSB, a California Bank, to a bank account maintained by Jackier Gould at Fifth Third Bank, an Ohio based bank.   These transfers were caused by all RICO Defendants acting in concert.

b.  The transfer of $551,000.00 on or about March 17, 2016 from the Jackier Gould bank account maintained at Fifth Third Bank, an Ohio based bank, to an account maintained by Wynnestone at JP Morgan Chase Bank, a New York based bank.  This transfer was executed by Bean and Jackier Gould and was caused by all RICO Defendants acting in concert.

c.  The transfer of $1,000,000.00 on or about March 21, 2016 from the Jackier Gould bank account maintained at Fifth Third Bank, an Ohio based bank, to Comerica Bank, a Texas based bank.  This transfer was executed by Bean and Jackier Gould and was caused by all RICO Defendants acting in concert. Upon information and belief, this transfer represented payment on Silverman and Wynnestone's Comerica Bank Debt.

d.  The transfer of $900,000.00 on or about March 21, 2016 from the Jackier Gould bank account maintained at Fifth Third Bank, an Ohio based bank, to an account at State Street Bank and Trust, a Massachusetts based bank.   This transfer was executed by Bean and Jackier Gould and was caused by all RICO Defendants acting in concert. Upon information and belief, this payment represented a payment on Silverman and Wynnestone's Litigation Debt.

e.  The transfer of $40,000.00 on or about March 21, 2016 from the Jackier Gould bank account maintained at Fifth Third Bank, an Ohio based bank, to an account maintained at Chemical Bank, a Michigan based bank.   This transfer was executed by Bean and Jackier Gould and was caused by all RICO Defendants acting in concert.

f.  The mailing of a check from Michigan on or about March 22, 2016 in the amount of $15,000.00 drawn on the Jackier Gould bank account maintained at Fifth Third Bank, an Ohio based bank, to PNC Bank, a Pennsylvania based bank, after which PNC Bank negotiated said check.  This check was mailed by Bean and Jackier Gould and was caused to be mailed by all RICO

Defendants acting in concert.  Upon information and belief, this payment represented a payment on Silverman and Wynnestone's Litigation Debt.

### ii. THE THEFT OF MONEY FROM THE BICENTENNIAL PLAINTIFFS AND THE INTERSTATE TRANSPORTATION OF THOSE STOLEN FUNDS

88. On or about August 1, 2013, Silverman, Wynnestone, Bean, and Jackier Gould, acting in furtherance of the common purpose of the Silverman Enterprise, used Wynnestone's status as the general partner of Bicentennial to sell the Bicentennial Project to Bicentennial Investors Limited Dividend Housing Association LLC for a total sale price of $12,100,00.00.

89. At all times relevant to the sale of the Bicentennial Project and the events described herein, Bean and Jackier Gould acted, or purported to act, as attorneys for Bicentennial, but their primary role was that of members of the Silverman Enterprise, and their primary purpose was serving the interests of the Silverman Enterprise and achieving the objectives of the Silverman Enterprise.

90. At the time of the closing of the sale of the Bicentennial Project, all legitimate obligations of the partnership, other than the money to be distributed to the Bicentennial Plaintiffs and the other partners, were paid from the sale proceeds, and the net sale proceeds, after the payment of said obligations, were at least approximately $2,629,667.77.  Pursuant to the partnership agreement governing Bicentennial, upon the sale of the Bicentennial Project, the purpose of the partnership had concluded and the net sale proceeds and other surplus cash were due and payable to the Bicentennial Plaintiffs and the other partners of Bicentennial.

91. Silverman, Wynnestone, Bean and Jackier Gould, acting in concert, stole/embezzled the $2,629,667.77 net proceeds from the sale of the Bicentennial Project by, among other things, directing Fidelity National Title Insurance Company to transfer the net proceeds, on or about August 1, 2013, to a bank account maintained by Jackier Gould at Fifth

Third Bank for distribution in accordance with the improper purposes of the Silverman Enterprise.

92.     After the sale of the Bicentennial Project, Silverman, Wynnestone, Bean and Jackier Gould, acting in concert, stole/embezzled an additional $2,435,150.48 from the Bicentennial Plaintiffs, and the other partners, that had been held by MSDHA.  These funds were Replacement Reserves that MSHDA held while Bicentennial owned and operated the Bicentennial Project.  The purpose of these funds was to fund repairs to the Bicentennial Project while Bicentennial owned and operated the Bicentennial Project.  The use of these funds is governed by a regulatory agreement between MSHDA and Bicentennial, and Defendants are in possession of said regulatory agreement.  Pursuant to this regulatory agreement, the only circumstance under which Bicentennial could receive the Replacement Reserves from MSDHA after the sale of the Bicentennial Project was if, and to the extent that, there were any cumulative unpaid limited dividends owing to the Bicentennial Plaintiffs and the partners.   At the time of the sale of the Bicentennial Project, the amount of cumulative unpaid limited dividends owing to the Bicentennial Plaintiffs and the other partners exceeded the $2,435,150.48 in Replacement Reserves held by MSHDA.  Thus, Bicentennial was entitled to receive all of the Replacement Reserves only because those funds were owed and payable to the Bicentennial Plaintiffs and the other partners.

93.     On or about December 22, 2015, MSHDA released control of the $2,435,150.48 Replacement Reserves to Bicentennial and/or to Wynnestone as the managing general partner of Bicentennial.   Once MSHDA released control of these funds, it had no authority to control how those funds were actually used.

94.     From on or about December 22, 2015 to December 23, 2015, and after MSDHA released control over the $2,435,150.48 in Replacement Reserves, Silverman, Wynnestone, Bean and Jackier Gould, acting in concert, stole/embezzled those funds by entering into a written agreement with MSHDA that authorized MSHDA to use $735,728 of those reserves to pay an obligation of Silverman/Wynnestone's that was unrelated to Bicentennial, and that further directed MSHDA to transfer the remaining $1,699,422.48 to a bank account maintained by Jackier Gould at Fifth Third Bank for distribution in accordance with the improper purposes of the Silverman Enterprise.

95.     Continuing from the date of the sale of the Bicentennial Project through at least 2015, and knowing that the above money represented money that had been stolen/embezzled from the Bicentennial Plaintiffs and the other partners, Silverman, Wynnestone, Bean and Jackier Gould, acting in concert, transferred this money, or caused it to be transferred, to Silverman and/or Wynnestone's creditors, and/or transferred this money, or caused it to be transferred, to themselves for their own use.  Said transfers and uses included transfers of the stolen money in interstate commerce.  By way of example only, and without limitation, such interstate transfers of the stolen funds included the following:

        a.   The transfer of $1,400,000.00 on or about December 28, 2015 from the Jackier Gould bank account maintained at Fifth Third Bank, an Ohio based bank, to an account at State Street Bank and Trust, a Massachusetts based bank.  This transfer was executed by Bean and Jackier Gould and was caused by all RICO Defendants acting in concert. Upon information and belief, this payment represented a payment on Silverman and Wynnestone's Litigation Debt.

b.   The transfer of approximately $300,000.00 on or about December 28, 2015 from the Jackier Gould bank account maintained at Fifth Third Bank, an Ohio based bank, to Comerica Bank, a Texas based bank.   This transfer was executed by Bean and Jackier Gould and was caused by all RICO Defendants acting in concert.   Upon information and belief, this transfer represented payment of Silverman and Wynnestone's Comerica Bank Debt.

### iii.   THE THEFT OF MONEY FROM THE WHISPERING WOODS PLAINTIFFS AND THE INTERSTATE TRANSPORTATION OF THOSE STOLEN FUNDS

96.   On or about April 30, 2015, Silverman, Wynnestone, Bean, and Jackier Gould, acting in furtherance of the common purpose of the Silverman Enterprise, used Wynnestone's status as the general partner of Whispering Woods to sell the Whispering Woods Project to Whispering Woods Apartments Limited Dividend Housing Association, LLC for a total sale price of $10,548,264.53, $250,000.00 of which was paid between January 2015 through March 2015 as a down payment.

97.   At all times relevant to the sale of the Whispering Woods Project and the events described herein, Bean and Jackier Gould acted, or purported to act, as the attorneys for Whispering Woods, but their primary role was that of members of the Silverman Enterprise, and their primary purpose was serving the interests of the Silverman Enterprise and achieving the objectives of the Silverman Enterprise.

98.   At the time of the closing of the sale of the Whispering Woods Project, all legitimate obligations of the partnership, other than the money to be distributed to the Whispering Woods Plaintiffs and the other partners, were paid from the sale proceeds, and the net sale proceeds, after the payment of said obligations, were at least approximately $2,758,577.85.   Pursuant to the partnership agreement governing Whispering Woods, upon the

sale of the Whispering Woods Project, the purpose of the partnership had concluded and the net sale proceeds and other surplus cash were due and payable to the Whispering Woods Plaintiffs and the other partners.

99.     Instead of paying the net sale proceeds to the Whispering Woods Plaintiffs and the other partners, Silverman, Wynnestone, Bean and Jackier Gould, acting in concert, stole/embezzled those funds beginning in January of 2015 through May of 2015, among other things, directing Land Services USA, Inc. and First American Title Insurance Company to transfer the net sale proceeds to a bank account maintained by Jackier Gould at Fifth Third Bank for distribution in accordance with the improper purposes of the Silverman Enterprise.

100.    Continuing through 2015, and knowing that the money represented money that had been stolen/embezzled from the Whispering Woods Plaintiffs and the other partners, Silverman, Wynnestone, Bean and Jackier Gould, acting in concert, transferred this money, or caused it to be transferred, to Silverman and/or Wynnestone's creditors, and/or transferred this money, or caused it to be transferred, to themselves or others for their own use or benefit.  Said transfers included transfers of the stolen money in interstate commerce.  By way of example only, and without limitation, such interstate transfers of the stolen funds included the following:

    a.  The transfer of $100,000.00 on or about March 31, 2015 from a bank account maintained by First American Title Insurance Company at First American Trust, FSB, a California Bank, to a bank account maintained by Jackier Gould at Fifth Third Bank, an Ohio based bank.   This transfer was caused by all RICO Defendants acting in concert.

    b.  The transfer of $2,533,577.85 on or about May 1, 2015 from Land Services USA, Inc., a Pennsylvania company, to a bank account maintained by Jackier

Gould at Fifth Third Bank, an Ohio based bank.  This transfer was caused by all RICO Defendants acting in concert.

    c.   The transfer of $125,000.00 on or about May 1, 2015 from Land Services USA, Inc., a Pennsylvania company, to a bank account maintained by Jackier Gould at Fifth Third Bank, an Ohio based bank.  This transfer was caused by all RICO Defendants acting in concert.

    d.   The transfer of $1,000,000.00 on or about May 1, 2015 from the Jackier Gould bank account maintained at Fifth Third Bank, an Ohio based bank, to an account at State Street Bank and Trust, a Massachusetts based bank.   This transfer was executed by Bean and Jackier Gould and was caused by all RICO Defendants acting in concert. Upon information and belief, this transfer represented a payment on Silverman and Wynnestone's Litigation Debt.

    e.   The transfer of $1,500,000.00 on or about May 1, 2015 from the Jackier Gould bank account maintained at Fifth Third Bank, an Ohio based bank, to Comerica Bank, a Texas based bank. This transfer was executed by Bean and Jackier Gould and was caused by all RICO Defendants acting in concert. Upon information and belief, this transfer represented payment of Silverman and Wynnestone's Comerica Bank Debt.

101.    On or about June of 2015, Bean and Jackier Gould, acting, or purporting to act, as the attorneys for Whispering Woods, sent a letter to the limited partners of Whispering Woods, including the Whispering Woods Plaintiffs, falsely advising said partners that the Whispering Woods partnership agreement contained a provision that provided that all partners (including Wynnestone) waived the right to receive any of the proceeds from the sale of the Whispering

Woods Project, and, therefore, no proceeds from the sale would be distributed to any of the partners.  The Whispering Woods partnership agreement does not so provide.  In fact, Bean and Jackier Gould had just transferred *all* the sale proceeds to Wynnestone, or to Wynnestone's creditors, days prior to this letter, as set forth above.  The purpose of the Bean/Jackier Gould letter was to knowingly conceal the RICO Defendants' racketeering activity and to intentionally mislead the Whispering Woods limited partners, including the Whispering Woods Plaintiffs, into believing that they were not owed any money.

### iv.   THE THEFT OF MONEY FROM THE PARTNERS OF RIDGEWOOD VILLAGE AND THE INTERSTATE TRANSPORTATION OF THOSE STOLEN FUNDS

102.   On or about December 12, 2014, Silverman, Bean, and Jackier Gould, acting in furtherance of the common purpose of the Silverman Enterprise, used Wynnestone's status as the general partner of Ridgewood Village to sell the Ridgewood Village Project to TEG Ridgewood, LLC for a total sale price of $11,000,000.00.

103.   At all times relevant to the sale of the Ridgewood Village Project and the events described herein, Bean and Jackier Gould acted, or purported to act, as attorneys for Ridgewood Village, but their primary role was that of members of the Silverman Enterprise, and their primary purpose was serving the interests of the Silverman Enterprise and achieving the objectives of the Silverman Enterprise.

104.   At the time of the closing of the sale of the Ridgewood Village Project, all legitimate obligations of the partnership, other than the money to be distributed to the Ridgewood Village Plaintiffs and the other partners, were paid from the sale proceeds, and the net sale proceeds, after the payment of said obligations, were at least approximately $1,763,577.56.  Pursuant to the partnership agreement governing Ridgewood Village, upon the sale of the Ridgewood Village Project, the purpose of the partnership had concluded and the net

sale proceeds and all other surplus cash were due and payable to the Ridgewood Village Plaintiffs and the other partners.

105.    Instead of paying the net sale proceeds to the Ridgewood Village Plaintiffs and the other partners, Silverman, Wynnestone, Bean and Jackier Gould, acting in concert, stole/embezzled those funds on or about December 15, 2014 by, among other things, directing Title Source, Inc. to transfer the net sale proceeds to a bank account maintained by Jackier Gould at Fifth Third Bank for distribution in accordance with the improper purposes of the Silverman Enterprise.

106.    Continuing from the date of the sale of the Ridgewood Village Project through at least 2015, and knowing that the money represented money that had been stolen/embezzled from the Ridgewood Village Plaintiffs and the other partners, Silverman, Wynnestone, Bean and Jackier Gould, acting in concert, transferred this money, or caused it to be transferred, to Silverman and/or Wynnestone's creditors, and/or transferred this money, or caused it to be transferred, to themselves or others for their own use or benefit.  Said transfers included transfers of the stolen money in interstate commerce.  By way of example only, and without limitation, such interstate transfers of the stolen funds included the following:

      a.  The transfer of $600,000.00 on or about December 16, 2014 from the bank account maintained by Jackier Gould at Fifth Third Bank, an Ohio based bank, to State Street Bank and Trust, a Massachusetts based bank.   This transfer was executed by Bean and Jackier Gould and was caused by all RICO Defendants acting in concert.   Upon information and belief, this transfer represented a payment on Silverman and Wynnestone's Litigation Debt.

b. The transfer of $200,000.00 on or about December 16, 2014 from the Jackier Gould bank account maintained at Fifth Third Bank, an Ohio based bank, to an account maintained by Wynnestone at JP Morgan Chase Bank, a New York based bank. Upon information and belief, this transfer was executed by Bean and Jackier Gould and was caused by all RICO Defendants acting in concert.

c. The transfer of $1,000,000.00 on or about December 16, 2014 from the Jackier Gould bank account maintained at Fifth Third Bank, an Ohio based bank, to Comerica Bank, a Texas based bank. This transfer was executed by Bean and Jackier Gould and was caused by all RICO Defendants acting in concert. Upon information and belief, this transfer represented payment of Silverman and Wynnestone's Comerica Bank Debt.

**B. ADDITIONAL FACTUAL ALLEGATIONS RELATED TO BICENTENNIAL**

107. Beginning no later than 2012 and continuing through at least 2015, Silverman and Wynnestone improperly siphoned large amounts of money from Bicentennial by, among other things:

a. Improperly causing Bicentennial to pay money to, and/or incur alleged debt to, various other companies owned or controlled by Silverman and/or Wynnestone for various alleged services where said services were never rendered, and/or where the price charged to Bicentennial by said companies was unreasonable. These Silverman/Wynnestone owned businesses include, but are not limited to:

   i. Urban Realty Construction, LLC

   ii. Urban Management Supply, LLC

   iii. Security Services Global, LLC

        iv.   Blue Moon Partners, LLC

   b.   Improperly taking or otherwise causing Bicentennial to pay Wynnestone money to which it was not entitled, sometimes under the guise of fees or interest.

   c.   Improperly causing Bicentennial to give money to Wynnestone, or affiliates of Wynnestone, under the guise of loans, which were never repaid.

## C.   WYNNESTONE'S REFUSAL TO PERMIT PLAINTIFFS TO INSPECT RECORDS

108.   In accordance with the partnership agreements for Industrial-Stevens, Bicentennial, Whispering Woods, and Ridgewood Village, Defendant Wynnestone maintains the books and records of the respective partnerships. Those partnership agreements, the Michigan Uniform Partnership Act, and the Michigan Revised Uniform Limited Partnership Act provide that each partner may inspect the books and records of the partnerships. Wynnestone is in exclusive possession of the complete books and records of each of the partnerships.

109.   On October 8, 2018, all Plaintiffs requested that Wynnestone permit them access to the records of their respective partnership when said Plaintiffs, through their counsel, sent a letter to Wynnestone requesting the opportunity to inspect the books and records of the partnerships. Wynnestone refused to permit Plaintiffs to inspect the complete books and records of the partnerships. After Plaintiffs' October 8, 2018 request to inspect records, Wynnestone did permit Plaintiffs' counsel to review a number of largely irrelevant documents related to the partnerships, but these were clearly incomplete records of the partnerships.

110.   Because Wynnestone denied Plaintiffs access to the complete books and records of the partnerships, Plaintiffs are presently unaware of the full extent of Wynnestone's breaches of fiduciary duties, breaches of the partnership agreements, and/or other wrongs. Nor, at present, can Plaintiffs determine the full extent to which Wynnestone otherwise mismanaged the

partnerships for its own benefit and profit, or the full extent of the funds otherwise due to them that Silverman, Wynnestone, Bean and/or Jackier Gould improperly took or caused to be transferred to other persons or entities, or the full extent of their damages.   Nor can Plaintiffs determine, at this time, whether Silverman and Wynnestone siphoned money from Whispering Woods, Industrial-Stevens and Ridgewood Village as they did with Bicentennial. As such, Plaintiffs intend to amend this Complaint once they obtain the complete books and records of each of the partnerships.

     **D.**     **WYNNESTONE'S REFUSAL TO PROVIDE ACCOUNTINGS**

111.     On October 8, 2018, Plaintiffs each demanded an accounting of the financial affairs and transactions of their partnerships from Wynnestone, but Wynnestone has refused all such accountings to date.

**COUNT 1**
**18 U.S.C. § 1962(c)**
**ALL PLAINTIFFS AGAINST**
**DEFENDANTS SILVERMAN, WYNNESTONE, BEAN AND JACKIER GOULD**

112.     The forgoing paragraphs are incorporated as if fully set forth herein.

113.     The Silverman Enterprise is an enterprise engaged in and whose activities affect interstate commerce.   Silverman, Wynnestone, Bean, and Jackier Gould are employed by or associated with the Silverman Enterprise.

114.     Silverman, Wynnestone, Bean, and Jackier Gould agreed to and did conduct and participate in the conduct of the Silverman Enterprise's affairs, directly and indirectly, through a pattern of racketeering activity and for the unlawful purpose of stealing and/or embezzling the money payable to Plaintiffs to pay Silverman and Wynnestone's debts and to otherwise enrich themselves, as set forth above, in violation of 18 U.S.C. § 1962(c).

115.    Pursuant to and in furtherance of their scheme, Silverman, Wynnestone, Bean, and Jackier Gould committed multiple related predicate acts of racketeering activity. Specifically, said defendants committed the related acts of interstate transportation of stolen goods (money) in violation of 18 U.S.C. § 2314, as set forth above.  These acts constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

116.    As a direct and proximate cause of Silverman, Wynnestone, Bean, and Jackier Gould's racketeering activities in violation of 18 U.S.C. § 1962(c), Plaintiffs have each been damaged in their business and property in that each has been deprived of the money that was required to be paid to them after the sales of the respective apartment buildings.

WHEREFORE, Plaintiffs each request that this Court enter judgment against Defendants Silverman, Wynnestone, Bean, and Jackier Gould, jointly and severally, in whatever amount a jury determines to be appropriate, including actual damages, treble damages, costs, attorney fees, and awarding all other relief consistent with law and equity.

### COUNT 2
### 18 U.S.C. § 1962(d)
### ALL PLAINTIFFS AGAINST
### DEFENDANTS SILVERMAN, WYNNESTONE, BEAN AND JACKIER GOULD

117.    The forgoing paragraphs are incorporated as if fully set forth herein.

118.    Silverman, Wynnestone, Bean, and Jackier Gould agreed and conspired to violate 18 U.S.C. § 1962 (c).  Specifically, said defendants conspired to conduct the affairs of the Silverman Enterprise through a series of racketeering activity, including through the interstate transportation of stolen property (money), in violation of 18 U.S.C. § 2314, as set forth above.

119.    Silverman, Wynnestone, Bean, and Jackier Gould knew that their overt/predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes of the Silverman Enterprise and to further the Silverman Enterprise itself,

and said Defendants agreed that one, some, or all of them would commit, or caused to be committed, at least two overt/predicate acts of interstate transportation of stolen property, as set forth above.

120.     As a direct and proximate cause of Silverman, Wynnestone, Bean, and Jackier Gould's conspiracy, the overt acts taken in furtherance of that conspiracy, and the violations of 18 U.S.C. § 1962 (d) and 18 U.S.C. § 2314, Plaintiffs have each been damaged in their business and property in that each has been deprived of the money that was required to be paid to them after the sales of the respective apartment buildings.

WHEREFORE, Plaintiffs each request that this Court enter judgment against Defendants Silverman, Wynnestone, Bean, and Jackier Gould, jointly and severally, in whatever amount a jury determines to be appropriate, including actual damages, treble damages, costs, and attorney fees, and awarding all other relief consistent with law and equity.

**COUNT 3**
**BREACH OF CONTRACT**
**INDUSTRIAL-STEVENS PLAINTIFFS AGAINST**
**DEFENDANTS SILVERMAN AND WYNNESTONE**

121.     The forgoing paragraphs are incorporated as if fully set forth herein.

122.     A valid contract (the Industrial-Stevens partnership agreement) exists between Wynnestone and each of the Industrial-Stevens Plaintiffs.

123.     Wynnestone breached the partnership agreement as to the Industrial-Stevens Plaintiffs by, among other things: a) exceeding the authority granted to it by the partnership agreement and mismanaging Industrial-Stevens for the benefit of Wynnestone and/or Silverman, b) not distributing the net proceeds from the sale of the Industrial-Stevens Project to the Industrial-Stevens Plaintiffs, c) not distributing the other cash held by Industrial-Stevens and/or HUD/MSHDA to the Industrial-Stevens Plaintiffs as required after the sale of the Industrial-

Stevens Project, d) taking money to which it was not entitled, and e) not giving the Industrial-Stevens Plaintiffs access to the partnership books and records, all as set forth above.

124.    As a direct and proximate cause of Wynnestone's breaches of contract, the Industrial-Stevens Plaintiffs have each suffered significant monetary damages.

WHEREFORE, Plaintiffs each request that this Court enter judgment against Defendants Silverman and Wynnestone jointly and severally, in whatever amount a jury determines to be appropriate, including actual damages, costs, and attorney fees, and awarding all other relief consistent with law and equity.

**COUNT 4**
**ACCOUNTING**
**INDUSTRIAL-STEVENS PLAINTIFFS AGAINST**
**DEFENDANTS SILVERMAN AND WYNNESTONE**

125.    The forgoing paragraphs are incorporated as if fully set forth herein.

126.    On October 8, 2018, the Industrial-Stevens Plaintiffs demanded an accounting of the financial affairs and transactions of the partnership, but Wynnestone refused such an accounting.

127.    Pursuant to the Michigan Revised Uniform Limited Partnership Act, and the Michigan Uniform Partnership Act, the Industrial-Stevens Plaintiffs are entitled to an accounting of the partnership affairs, including all assets, income, profits, losses, expenses and transactions of the partnership.

128.    The Industrial-Stevens Plaintiffs are entitled to an accounting of Industrial-Stevens' affairs because Silverman and Wynnestone must account for any benefit, and hold as trustees, any profits derived by him/it without the consent of the other partners, including the Industrial-Stevens Plaintiffs, from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him/it of partnership property, including any

and all benefit and/or profit realized by Silverman or Wynnestone, or any benefit or profit that Silverman or Wynnestone caused the partnership to confer on any person or entity as a result of any of the actions, omissions, breaches of contract, and/or breaches of fiduciary duties set forth herein.

129.    The Industrial-Stevens Plaintiffs are further entitled to an accounting of the partnership affairs because they have been excluded from the partnership business and/or possession of its property by Silverman and Wynnestone, and because such an accounting is just and reasonable under the circumstances herein.

WHEREFORE, the Industrial-Stevens Plaintiffs respectfully request that this Court enter judgment that: a) requires a full accounting, at the expense of Silverman and Wynnestone, of all partnership assets, liabilities and transactions, b) requires Silverman and Wynnestone, jointly and severally, to repay all partnership assets and funds that he/it improperly took or caused the partnership to pay to Silverman and Wynnestone or other persons or entities, c) appoints a receiver, at the expense of Silverman and Wynnestone, to recover all partnership funds and assets that Silverman and Wynnestone caused the partnership to pay to Silverman and Wynnestone or other persons or entities, or that Silverman and Wynnestone otherwise took from the partnership, d) distributes the assets of the partnership, including the proceeds from the sale of the Industrial-Stevens Project, in accordance with the partnership agreement and/or the Michigan Uniform Partnership Act and the Michigan Revised Uniform Limited Partnership Act, e) otherwise winds up the affairs of the partnership, f) awards attorney fees and costs to Plaintiffs, and g) orders all other appropriate relief consistent with law and equity.

**COUNT 5**
**DISSOLUTION OF INDUSTRIAL-STEVENS**

130.    The forgoing paragraphs are incorporated as if fully set forth herein.

131.    Pursuant to the Michigan Revised Uniform Limited Partnership Act and the Michigan Uniform Partnership Act, the Industrial-Stevens Plaintiffs are entitled to the dissolution of Industrial-Stevens.

132.    The Industrial-Stevens Plaintiffs are entitled to the dissolution of Industrial-Stevens because the acts of Wynnestone are and/or have been illegal, fraudulent, or willfully unfair and oppressive to Industrial-Stevens and/or to the Industrial-Stevens Plaintiffs, including but not limited to by way of the actions, omissions, breaches of contract, and/or breaches of fiduciary duties set forth herein.  Wynnestone has been guilty of such conduct as tends to effect prejudicially the carrying on of the business of Industrial-Stevens, as set forth herein.

133.    The Industrial-Stevens Plaintiffs are further entitled to the dissolution of Industrial-Stevens because Wynnestone has willfully or persistently breached the Partnership Agreement, and has otherwise so conducted itself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with it, as set forth herein.

134.    Since the Industrial-Stevens Project has been sold, the only thing remaining to be done in order to terminate Industrial-Stevens consistent with the Partnership Agreement is for the net proceeds of said sale and all other distributable funds to be distributed to the partners, including the Industrial-Stevens Plaintiffs.

WHEREFORE, the Industrial-Stevens Plaintiffs each respectfully request that this Court enter judgment dissolving Industrial-Stevens and ordering all other appropriate relief consistent with law and equity.

## COUNT 6
## BREACH OF FIDUCIARY DUTY
## INDUSTRIAL-STEVENS PLAINTIFFS AGAINST
## DEFENDANTS SILVERMAN AND WYNNESTONE

135.    The forgoing paragraphs are incorporated as if fully set forth herein.

136.    As the managing general partner of Industrial-Stevens, Wynnestone owed the Industrial-Stevens Plaintiffs the fiduciary duties imposed by law of not mere honesty, but the punctilio of honor most sensitive, including the utmost good faith and integrity in partnership affairs.  Wynnestone owed the Industrial-Stevens Plaintiffs the further duties of full and frank disclosure of all relevant information and all material facts within its knowledge in any way relating to the partnership affairs, and to render on demand true and full information of all things affecting the partnership.

137.    Wynnestone acted in bad faith and/or fraudulently, and for its own improper self-interest and the interest of Silverman, and breached its fiduciary duties to the Industrial-Stevens Plaintiffs by, among other things: a) improperly seizing control of the partnership and operating it for the unfair and improper benefit and profit of Wynnestone and/or Silverman, b) stealing, embezzling and/or otherwise improperly disposing of the proceeds of the sale of the Industrial-Stevens Project, c) stealing, embezzling and/or otherwise improperly disposing of the other cash held by Industrial-Stevens and/or HUD/MSHDA that was payable to the Industrial-Stevens Plaintiffs, d) not giving Plaintiffs access to the partnership books and records, e) not permitting or conducting an accounting of the partnership as demanded, and f) not admitting LP Equity as a partner in the place of the assigning Industrial-Stevens Assigning Plaintiffs, all as set forth above.

138.    As a direct and proximate cause of Defendant Wynnestone's breaches of fiduciary duties, the Industrial-Stevens Plaintiffs have each suffered significant monetary damages.

WHEREFORE, Plaintiffs each request that this Court enter judgment against Defendants Silverman and Wynnestone, jointly and severally, in whatever amount a jury determines to be appropriate, including actual damages, costs, and attorney fees, and awarding all other relief consistent with law and equity.

**COUNT 7**
**THEFT/EMBEZZLEMENT**
**INDUSTRIAL-STEVENS PLAINTIFFS, OTHER THAN**
**PLAINTIFF TASHMAN, AGAINST DEFENDANTS SILVERMAN,**
**WYNNESTONE, BEAN AND JACKIER GOULD**

139. The forgoing paragraphs are incorporated as if fully set forth herein.

140. Silverman, Wynnestone, Bean, and Jackier Gould stole and/or embezzled those funds that were required to be distributed to the Industrial-Stevens Plaintiffs, as set forth above.

141. Silverman, Wynnestone, Bean, and Jackier Gould intended to, and did in fact, permanently and unlawfully deprive the Industrial-Stevens Plaintiffs of the money that was required to be paid to them, as set forth above, in violation of MCL § 600.2919a; MCL §750.356; MCL §750.362, the duties imposed by said statutes, and Michigan common law.

142. Silverman, Wynnestone, Bean, and Jackier Gould were the custodians and/or trustees of the money that was required to be paid to the Industrial-Stevens Plaintiffs, and/or were persons who received or collected said funds, and/or were persons to whom said funds were delivered. Silverman, Wynnestone, Bean, and Jackier Gould embezzled, fraudulently disposed of and/or converted said funds to their own use, in violation of MCL § 600.2919a; MCL § 750.174; MCL § 750.181; MCL § 750.362, the duties imposed by said statutes, and Michigan common law.

143.     As a direct and proximate cause of Silverman, Wynnestone, Bean, and Jackier Gould's theft and embezzlement, the Industrial-Stevens Plaintiffs have each suffered significant monetary damages.

144.     Silverman, Wynnestone, Bean, and Jackier Gould are liable for treble damages, costs and attorney fees pursuant to MCL §600.2919a.

WHEREFORE, the Industrial-Stevens Plaintiffs, other than Plaintiff Tashman, request that this Court enter judgment against Defendants Silverman, Wynnestone, Bean, and Jackier Gould, jointly and severally, in whatever amount a jury determines to be appropriate, including actual damages, treble damages, costs, attorney fees, and awarding all other relief consistent with law and equity.

## COUNT 8
## BREACH OF CONTRACT
## BICENTENNIAL PLAINTIFFS AGAINST
## DEFENDANTS SILVERMAN AND WYNNESTONE

145.     The forgoing paragraphs are incorporated as if fully set forth herein.

146.     A valid contract (the Bicentennial partnership agreement) exists between Wynnestone and each of the Bicentennial Plaintiffs.

147.     Wynnestone breached the partnership agreement as to the Bicentennial Plaintiffs by, among other things: a) exceeding the authority granted to it by the partnership agreement and mismanaging Bicentennial for the benefit of Wynnestone and/or Silverman, b) not distributing the net proceeds from the sale of the Bicentennial Project to the Bicentennial Plaintiffs, c) not distributing the other cash held by Bicentennial and/or HUD/MSHDA to the Bicentennial Plaintiffs as required after the sale of the Bicentennial Project, d) not substituting LP Equity as a partner in Bicentennial in the place of the Bicentennial Assigning Partners, e) taking money to

which it was not entitled, f) not giving the Bicentennial Plaintiffs access to the partnership books and records, all as set forth above.

148. As a direct and proximate cause of Wynnestone's breaches of contract, the Bicentennial Plaintiffs have each suffered significant monetary damages.

WHEREFORE, the Bicentennial Plaintiffs each request that this Court enter judgment against Defendants Silverman and Wynnestone jointly and severally, in whatever amount a jury determines to be appropriate, including actual damages, costs, and attorney fees, and awarding all other relief consistent with law and equity.

**COUNT 9**
**ACCOUNTING**
**BICENTENNIAL PLAINTIFFS AGAINST**
**DEFENDANTS SILVERMAN AND WYNNESTONE**

149. The forgoing paragraphs are incorporated as if fully set forth herein.

150. On October 8, 2018, the Bicentennial Plaintiffs demanded an accounting of the financial affairs and transactions of the partnership, but Wynnestone has refused to provide such an accounting.

151. Pursuant to the Michigan Revised Uniform Limited Partnership Act, and the Michigan Uniform Partnership Act, the Bicentennial Plaintiffs are entitled to an accounting of the partnership affairs, including all assets, income, profits, losses, expenses and transactions of the partnership.

152. The Bicentennial Plaintiffs are entitled to an accounting of the Bicentennial affairs because Silverman and Wynnestone must account for any benefit, and hold as trustees, any profits derived by him/it without the consent of the other partners, including Plaintiffs, from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him/it of partnership property, including any and all benefit and/or profit realized by

Silverman or Wynnestone, or any benefit or profit that Silverman or Wynnestone caused the partnership to confer on any person or entity as a result of any of the actions, omissions, breaches of contract, and/or breaches of fiduciary duties set forth herein.

153.    The Bicentennial Plaintiffs are further entitled to an accounting of the partnership affairs because they have been excluded from the partnership business and/or possession of its property by Silverman and Wynnestone, and because such an accounting is just and reasonable under the circumstances herein.

WHEREFORE, the Bicentennial Plaintiffs respectfully request that this Court enter judgment that: a) requires a full accounting, at the expense of Silverman and Wynnestone, of all partnership assets, liabilities and transactions, b) requires Silverman and Wynnestone, jointly and severally, to repay all partnership assets and funds that he/it improperly took or caused the partnership to pay to Silverman and Wynnestone or to other persons or entities, c) appoints a receiver, at the expense of Silverman and Wynnestone, to recover all partnership funds and assets that Silverman and Wynnestone caused the partnership to pay to Silverman and Wynnestone or to other persons or entities, or that Silverman and Wynnestone otherwise took from the partnership, d) distributes the assets of the partnership, including the proceeds from the sale of the Bicentennial Project, in accordance with the partnership agreement and/or the Michigan Uniform Partnership Act and the Michigan Revised Uniform Limited Partnership Act, e) otherwise winds up the affairs of the partnership, f) awards attorney fees and costs to Plaintiffs, and g) orders all other appropriate relief consistent with law and equity.

### COUNT 10
### DISSOLUTION OF BICENTENNIAL

154.    The forgoing paragraphs are incorporated as if fully set forth herein.

155.    Pursuant to the Michigan Revised Uniform Limited Partnership Act and the Michigan Uniform Partnership Act, the Bicentennial Plaintiffs are entitled to the dissolution of Bicentennial.

156.    The Bicentennial Plaintiffs are entitled to the dissolution of Bicentennial because the acts of Wynnestone are and/or have been illegal, fraudulent, or willfully unfair and oppressive to Bicentennial and/or to the Bicentennial Plaintiffs, including but not limited to by way of the actions, omissions, breaches of contract, and/or breaches of fiduciary duties set forth herein.  Wynnestone has been guilty of such conduct as tends to effect prejudicially the carrying on of the business of Bicentennial, as set forth herein.

157.    The Bicentennial Plaintiffs are further entitled to the dissolution of Bicentennial because Wynnestone has willfully or persistently breached the Partnership Agreement, and has otherwise so conducted itself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with it, as set forth herein.

158.    Since the Bicentennial Project has been sold, the only thing remaining to be done in order to terminate Bicentennial consistent with the Partnership Agreement is for the net proceeds of said sale and all other distributable funds to be distributed to the Bicentennial Plaintiffs.

WHEREFORE, the Bicentennial Plaintiffs each respectfully request that this Court enter judgment dissolving Bicentennial and ordering all other appropriate relief consistent with law and equity.

### COUNT 11
### BREACH OF FIDUCIARY DUTY
### BICENTENNIAL PLAINTIFFS AGAINST
### DEFENDANTS SILVERMAN AND WYNNESTONE

159.    The forgoing paragraphs are incorporated as if fully set forth herein.

160.    As the managing general partner of Bicentennial, Wynnestone owed the Bicentennial Plaintiffs the fiduciary duties imposed by law of not mere honesty, but the punctilio of honor most sensitive, including the utmost good faith and integrity in partnership affairs. Wynnestone owed the Bicentennial Plaintiffs the further duties of full and frank disclosure of all relevant information and all material facts within its knowledge in any way relating to the partnership affairs, and to render on demand true and full information of all things affecting the partnership.

161.    Wynnestone acted in bad faith and/or fraudulently, and for its own improper self-interest and the interest of Silverman, and breached its fiduciary duties to the Bicentennial Plaintiffs by, among other things: a) improperly seizing control of the partnership and operating it for the unfair and improper benefit and profit of Wynnestone and/or Silverman, b) selling the Bicentennial Project so that Silverman and Wynnestone could pay their creditors and not because it was in the best interests of the Bicentennial Plaintiffs, c) stealing, embezzling and/or otherwise improperly disposing of the proceeds of the sale of the Bicentennial Project, d) stealing, embezzling and/or otherwise improperly disposing of the other cash held by Bicentennial and/or HUD/MSHDA that was payable to the Bicentennial Plaintiffs, e) not giving Plaintiffs access to the partnership books and records, f) not permitting or conducting an accounting of the partnership as demanded, and g) not admitting LP Equity as a partner in the place of the assigning Bicentennial Assigning Partners, all as set forth above.

162.    As a direct and proximate cause of Defendant Wynnestone's breaches of fiduciary duties, the Bicentennial Plaintiffs have each suffered significant monetary damages.

WHEREFORE, the Bicentennial Plaintiffs each request that this Court enter judgment against Defendants Silverman and Wynnestone, jointly and severally, in whatever amount a jury

determines to be appropriate, including actual damages, costs, and attorney fees, and awarding all other relief consistent with law and equity.

## COUNT 12
### THEFT/EMBEZZLEMENT
### BICENTENNIAL PLAINTIFFS AGAINST
### DEFENDANTS SILVERMAN, WYNNESTONE, BEAN AND JACKIER GOULD

163.     The forgoing paragraphs are incorporated as if fully set forth herein.

164.     Silverman, Wynnestone, Bean, and Jackier Gould stole and/or embezzled those funds that were required to be distributed to the Bicentennial Plaintiffs, as set forth above.

165.     Silverman, Wynnestone, Bean, and Jackier Gould intended to, and did in fact, permanently and unlawfully deprive the Bicentennial Plaintiffs of the money that was required to be paid to them, as set forth above, in violation of MCL § 600.2919a; MCL §750.356; MCL §750.362, the duties imposed by said statutes, and Michigan common law.

166.     Silverman, Wynnestone, Bean, and Jackier Gould were the custodians and/or trustees of the money that was required to be paid to the Bicentennial Plaintiffs, and/or were persons who received or collected said funds, and/or were persons to whom said funds were delivered.  Silverman, Wynnestone, Bean, and Jackier Gould embezzled, fraudulently disposed of and/or converted said funds to their own use, in violation of MCL § 600.2919a; MCL § 750.174; MCL § 750.181; MCL § 750.362, the duties imposed by said statutes, and Michigan common law.

167.     As a direct and proximate cause of Silverman, Wynnestone, Bean, and Jackier Gould's theft and embezzlement, Plaintiffs have each suffered significant monetary damages.

168.     Silverman, Wynnestone, Bean, and Jackier Gould are liable for treble damages, costs and attorney fees pursuant to MCL §600.2919a.

WHEREFORE, the Bicentennial Plaintiffs each request that this Court enter judgment against Defendants Silverman, Wynnestone, Bean, and Jackier Gould, jointly and severally, in whatever amount a jury determines to be appropriate, including actual damages, treble damages, costs, attorney fees, and awarding all other relief consistent with law and equity.

**COUNT 13**
**BREACH OF CONTRACT**
**WHISPERING WOODS PLAINTIFFS AGAINST**
**DEFENDANTS SILVERMAN AND WYNNESTONE**

169.     The forgoing paragraphs are incorporated as if fully set forth herein.

170.     A valid contract (the Whispering Woods partnership agreement) exists between Wynnestone and each of the Whispering Woods Plaintiffs.

171.     Wynnestone breached the partnership agreement as to the Whispering Woods Plaintiffs by, among other things: a) exceeding the authority granted to it by the partnership agreement and mismanaging Whispering Woods for the benefit of Wynnestone and/or Silverman, b) not distributing the net proceeds from the sale of the Whispering Woods Project to the Whispering Woods Plaintiffs, c) taking money to which it was not entitled, d) not giving the Whispering Woods Plaintiffs access to the partnership books and records, all as set forth above.

172.     As a direct and proximate cause of Wynnestone's breaches of contract, the Whispering Woods Plaintiffs have each suffered significant monetary damages.

WHEREFORE, the Whispering Woods Plaintiffs each request that this Court enter judgment against Defendants Silverman and Wynnestone jointly and severally, in whatever amount a jury determines to be appropriate, including actual damages, costs, and attorney fees, and awarding all other relief consistent with law and equity.

**COUNT 14**
**ACCOUNTING**
**WHISPERING WOODS PLAINTIFFS AGAINST**
**DEFENDANTS SILVERMAN AND WYNNESTONE**

173.    The forgoing paragraphs are incorporated as if fully set forth herein.

174.    On October 8, 2018, the Whispering Woods Plaintiffs demanded an accounting of the financial affairs and transactions of the partnership, but Wynnestone has failed to provide such an accounting.

175.    Pursuant to the Michigan Revised Uniform Limited Partnership Act, and the Michigan Uniform Partnership Act, the Whispering Woods Plaintiffs are entitled to an accounting of the partnership affairs, including all assets, income, profits, losses, expenses and transactions of the partnership.

176.    The Whispering Woods Plaintiffs are entitled to an accounting of the Whispering Woods affairs because Silverman and Wynnestone must account for any benefit, and hold as trustees, any profits derived by him/it without the consent of the other partners, including Plaintiffs, from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him/it of partnership property, including any and all benefit and/or profit realized by Silverman or Wynnestone, or any benefit or profit that Silverman or Wynnestone caused the partnership to confer on any person or entity as a result of any of the actions, omissions, breaches of contract, and/or breaches of fiduciary duties set forth herein.

177.    The Whispering Woods Plaintiffs are further entitled to an accounting of the partnership affairs because they have been excluded from the partnership business and/or possession of its property by Silverman and Wynnestone, and because such an accounting is just and reasonable under the circumstances herein.

WHEREFORE, the Whispering Woods Plaintiffs respectfully request that this Court enter judgment that: a) requires a full accounting, at the expense of Silverman and Wynnestone, of all partnership assets, liabilities and transactions, b) requires Silverman and Wynnestone, jointly and severally, to repay all partnership assets and funds that he/it improperly took or caused the partnership to pay to Silverman and Wynnestone or to other persons or entities, c) appoints a receiver, at the expense of Silverman and Wynnestone, to recover all partnership funds and assets that Silverman and Wynnestone caused the partnership to pay to Silverman and Wynnestone or to other persons or entities, or that Silverman and Wynnestone otherwise took from the partnership, d) distributes the assets of the partnership, including the proceeds from the sale of the Whispering Woods Project, in accordance with the partnership agreement and/or the Michigan Uniform Partnership Act and the Michigan Revised Uniform Limited Partnership Act, e) otherwise winds up the affairs of the partnership, f) awards attorney fees and costs to Plaintiffs, and g) orders all other appropriate relief consistent with law and equity.

## COUNT 15
## DISSOLUTION OF WHISPERING WOODS

178.    The forgoing paragraphs are incorporated as if fully set forth herein.

179.    Pursuant to the Michigan Revised Uniform Limited Partnership Act and the Michigan Uniform Partnership Act, the Whispering Woods Plaintiffs are entitled to the dissolution of Whispering Woods.

180.    The Whispering Woods Plaintiffs are entitled to the dissolution of Whispering Woods because the acts of Wynnestone are and/or have been illegal, fraudulent, or willfully unfair and oppressive to Whispering Woods and/or to the Whispering Woods Plaintiffs, including but not limited to by way of the actions, omissions, breaches of contract, and/or breaches of fiduciary duties set forth herein.  Wynnestone has been guilty of such conduct as

tends to effect prejudicially the carrying on of the business of Whispering Woods, as set forth herein.

181.    The Whispering Woods Plaintiffs are further entitled to the dissolution of Whispering Woods because Wynnestone has willfully or persistently breached the Partnership Agreement, and has otherwise so conducted itself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with it, as set forth herein.

182.    Since the Whispering Woods Project has been sold, the only thing remaining to be done in order to terminate Whispering Woods consistent with the Partnership Agreement is for the net proceeds of said sale and all other distributable funds to be distributed to the partners, including the Whispering Woods Plaintiffs.

WHEREFORE, the Whispering Woods Plaintiffs each respectfully request that this Court enter judgment dissolving Whispering Woods and ordering all other appropriate relief consistent with law and equity.

### COUNT 16
### BREACH OF FIDUCIARY DUTY
### WHISPERING WOODS PLAINTIFFS AGAINST
### DEFENDANTS SILVERMAN AND WYNNESTONE

183.    The forgoing paragraphs are incorporated as if fully set forth herein.

184.    As the managing general partner of Whispering Woods, Wynnestone owed the Whispering Woods Plaintiffs the fiduciary duties imposed by law of not mere honesty, but the punctilio of honor most sensitive, including the utmost good faith and integrity in partnership affairs.  Wynnestone owed the Whispering Woods Plaintiffs the further duties of full and frank disclosure of all relevant information and all material facts within its knowledge in any way

relating to the partnership affairs, and to render on demand true and full information of all things affecting the partnership.

185.     Wynnestone acted in bad faith and/or fraudulently, and for its own improper self-interest and the interest of Silverman, and breached its fiduciary duties to the Whispering Woods Plaintiffs by, among other things: a) improperly seizing control of the partnership and operating it for the unfair and improper benefit and profit of Wynnestone and/or Silverman, b) selling the Whispering Woods Project so that Silverman and Wynnestone could pay their creditors and not because it was in the best interests of the Whispering Woods Plaintiffs, c) stealing, embezzling and/or otherwise improperly disposing of the proceeds of the sale of the Whispering Woods Project, d) stealing, embezzling and/or otherwise improperly disposing of the other cash held by Whispering Woods, e) not giving Plaintiffs access to the partnership books and records, and f) not permitting or conducting an accounting of the partnership as demanded, all as set forth above.

186.     As a direct and proximate cause of Defendant Wynnestone's breaches of fiduciary duties, the Whispering Woods Plaintiffs have each suffered significant monetary damages.

WHEREFORE, the Whispering Woods Plaintiffs each request that this Court enter judgment against Defendants Silverman and Wynnestone, jointly and severally, in whatever amount a jury determines to be appropriate, including actual damages, costs, and attorney fees, and awarding all other relief consistent with law and equity.

**COUNT 17**
**BREACH OF CONTRACT**
**RIDGEWOOD VILLAGE PLAINTIFFS AGAINST**
**DEFENDANTS SILVERMAN AND WYNNESTONE**

187.     The forgoing paragraphs are incorporated as if fully set forth herein.

188.    A valid contract (the Ridgewood Village partnership agreement) exists between Wynnestone and each of the Ridgewood Village Plaintiffs.

189.    Wynnestone breached the partnership agreement as to the Ridgewood Village Plaintiffs by, among other things: a) exceeding the authority granted to it by the partnership agreement and mismanaging Ridgewood Village for the benefit of Wynnestone and/or Silverman, b) not distributing the net proceeds from the sale of the Ridgewood Village Project to the Ridgewood Village Plaintiffs, c) taking money to which it was not entitled, d) not giving the Ridgewood Village Plaintiffs access to the partnership books and records, all as set forth above.

190.    As a direct and proximate cause of Wynnestone's breaches of contract, the Ridgewood Village Plaintiffs have each suffered significant monetary damages.

WHEREFORE, the Ridgewood Village Plaintiffs each request that this Court enter judgment against Defendants Silverman and Wynnestone jointly and severally, in whatever amount a jury determines to be appropriate, including actual damages, costs, and attorney fees, and awarding all other relief consistent with law and equity.

**COUNT 18**
**ACCOUNTING**
**RIDGEWOOD VILLAGE PLAINTIFFS AGAINST**
**DEFENDANTS SILVERMAN AND WYNNESTONE**

191.    The forgoing paragraphs are incorporated as if fully set forth herein.

192.    On October 8, 2018, the Ridgewood Village Plaintiffs demanded an accounting of the financial affairs and transactions of the partnership, but Wynnestone has failed to provide such an accounting.

193.    Pursuant to the Michigan Revised Uniform Limited Partnership Act, and the Michigan Uniform Partnership Act, the Ridgewood Village Plaintiffs are entitled to an

accounting of the partnership affairs, including all assets, income, profits, losses, expenses and transactions of the partnership.

194.   The Ridgewood Village Plaintiffs are entitled to an accounting of the Ridgewood Village affairs because Silverman and Wynnestone must account for any benefit, and hold as trustees, any profits derived by him/it without the consent of the other partners, including Plaintiffs, from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him/it of partnership property, including any and all benefit and/or profit realized by Silverman or Wynnestone, or any benefit or profit that Silverman or Wynnestone caused the partnership to confer on any person or entity as a result of any of the actions, omissions, breaches of contract, and/or breaches of fiduciary duties set forth herein.

195.   The Ridgewood Village Plaintiffs are further entitled to an accounting of the partnership affairs because they have been excluded from the partnership business and/or possession of its property by Silverman and Wynnestone, and because such an accounting is just and reasonable under the circumstances herein.

WHEREFORE, the Ridgewood Village Plaintiffs respectfully request that this Court enter judgment that: a) requires a full accounting, at the expense of Silverman and Wynnestone, of all partnership assets, liabilities and transactions, b) requires Silverman and Wynnestone, jointly and severally, to repay all partnership assets and funds that he/it improperly took or caused the partnership to pay to Silverman and Wynnestone or to other persons or entities, c) appoints a receiver, at the expense of Silverman and Wynnestone, to recover all partnership funds and assets that Silverman and Wynnestone caused the partnership to pay to Silverman and Wynnestone or to other persons or entities, or that Silverman and Wynnestone otherwise took from the partnership, d) distributes the assets of the partnership, including the proceeds from the

sale of the Ridgewood Village Project, in accordance with the partnership agreement and/or the Michigan Uniform Partnership Act and the Michigan Revised Uniform Limited Partnership Act, e) otherwise winds up the affairs of the partnership, f) awards attorney fees and costs to Plaintiffs, and g) orders all other appropriate relief consistent with law and equity.

### COUNT 19
### DISSOLUTION OF RIDGEWOOD VILLAGE

196.   The forgoing paragraphs are incorporated as if fully set forth herein.

197.   Pursuant to the Michigan Revised Uniform Limited Partnership Act and the Michigan Uniform Partnership Act, the Ridgewood Village Plaintiffs are entitled to the dissolution of Ridgewood Village.

198.   The Ridgewood Village Plaintiffs are entitled to the dissolution of Ridgewood Village because the acts of Wynnestone are and/or have been illegal, fraudulent, or willfully unfair and oppressive to Ridgewood Village and/or to the Ridgewood Village Plaintiffs, including but not limited to by way of the actions, omissions, breaches of contract, and/or breaches of fiduciary duties set forth herein.  Wynnestone has been guilty of such conduct as tends to effect prejudicially the carrying on of the business of Ridgewood Village, as set forth herein.

199.   The Ridgewood Village Plaintiffs are further entitled to the dissolution of Ridgewood Village because Wynnestone has willfully or persistently breached the Partnership Agreement, and has otherwise so conducted itself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with it, as set forth herein.

200.   Since the Ridgewood Village Project has been sold, the only thing remaining to be done in order to terminate Ridgewood Village consistent with the Partnership Agreement is

for the net proceeds of said sale and all other distributable funds to be distributed to the partners, including the Ridgewood Village Plaintiffs.

WHEREFORE, the Ridgewood Village Plaintiffs each respectfully request that this Court enter judgment dissolving Ridgewood Village and ordering all other appropriate relief consistent with law and equity.

## COUNT 20
### BREACH OF FIDUCIARY DUTY
### RIDGEWOOD VILLAGE PLAINTIFFS AGAINST
### DEFENDANTS SILVERMAN AND WYNNESTONE

201.    The forgoing paragraphs are incorporated as if fully set forth herein.

202.    As the managing general partner of Ridgewood Village, Wynnestone owed the Ridgewood Village Plaintiffs the fiduciary duties imposed by law of not mere honesty, but the punctilio of honor most sensitive, including the utmost good faith and integrity in partnership affairs.  Wynnestone owed the Ridgewood Village Plaintiffs the further duties of full and frank disclosure of all relevant information and all material facts within its knowledge in any way relating to the partnership affairs, and to render on demand true and full information of all things affecting the partnership.

203.    Wynnestone acted in bad faith and/or fraudulently, and for its own improper self-interest and the interest of Silverman, and breached its fiduciary duties to the Ridgewood Village Plaintiffs by, among other things: a) improperly seizing control of the partnership and operating it for the unfair and improper benefit and profit of Wynnestone and/or Silverman, b) selling the Ridgewood Village Project so that Silverman and Wynnestone could pay their creditors and not because it was in the best interests of the Ridgewood Village Plaintiffs, c) stealing, embezzling and/or otherwise improperly disposing of the proceeds of the sale of the Ridgewood Village Project, d) stealing, embezzling and/or otherwise improperly disposing of the other cash held by

Ridgewood Village, e) not giving Plaintiffs access to the partnership books and records, and f) not permitting or conducting an accounting of the partnership as demanded, all as set forth above.

204.    As a direct and proximate cause of Defendant Wynnestone's breaches of fiduciary duties, the Ridgewood Village Plaintiffs have each suffered significant monetary damages.

WHEREFORE, the Ridgewood Village Plaintiffs each request that this Court enter judgment against Defendants Silverman and Wynnestone, jointly and severally, in whatever amount a jury determines to be appropriate, including actual damages, costs, and attorney fees, and awarding all other relief consistent with law and equity.

## JURY DEMAND

Plaintiffs each hereby demand a trial by jury on all claims raised herein.

Respectfully submitted,

/s/ *Michael Kemnitz*
MICHAEL J. KEMNITZ, PC
BY: MICHAEL J. KEMNITZ (P57227)
Attorney for Plaintiffs
645 Griswold, Suite 1717
Detroit, Michigan 48226
(313) 967-0100
mkemnitz@sbcglobal.net

Dated: September 5, 2019